# EMERY v. LORD.

BROKERS; FIRE INSURANCE; CONTRACTS; AGENCY; POLICIES; VACANCY PERMITS.

1. In an action against an insurance broker by the holder of a fire insurance policy for negligently failing to procure vacancy permits for which he was paid the required premium on the day before the fire, as a result of which the plaintiff was obliged to compromise a fire

loss with the insurance companies, who refused to pay the entire loss because no vacancy permits were in existence at the time of the fire, it is immaterial whether the plaintiff knew that the defendant was dealing through a particular agent of the companies, if the policies provide that the permits should be obtained from the proper agent; and if it appears from the testimony of the agent that the permits would have been issued on the day the premium was paid if the broker had communicated with him, and that there was ample time on that day for him to have done so by telephone, it is immaterial when a letter mailed on that day would have been delivered.

2. And, in such a case, in the absence of any showing to the contrary, it will be presumed that the agent of the company had the right to issue the vacancy permits without communication with his companies.

3. Such a vacancy permit will be valid, even though not attached to the policy,—especially where it was not the practice of the agent to physically attach them unless the policies were tendered at the time.

4. A clause in a fire insurance policy providing that the policy shall become void if the building insured "be or become vacant or unoccupied, and so remain for ten days," means the ten days next ensuing after the end of the term of the policy, and does not mean that the company shall be liable during the ten days after the expiration of any vacancy permit period.

No. 1752. Submitted April 5, 1907. Decided June 4, 1907.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action against an insurance broker to recover damages for his alleged negligence. *Affirmed.*

The facts are stated in the opinion.

*Mr. J. Enos Ray, Jr.,* and *Mr. William M. Lewin* for the appellant.

*Mr. Edwin C. Dutton* and *Mr. John Ridout* for the appellee.

Mr. Justice McComas delivered the opinion of the Court:

Mrs. Mary A. Lord, the appellee, obtained through Herbert C. Emery a policy of insurance against loss by fire in the

Phœnix Company of London for $2,000, and another policy in the Girard Company of Philadelphia for $1,000, upon her house near Ardmore, in Maryland. On September 15, 1905, the appellee left her home and removed to Washington for the winter, and on that day she paid Mr. Emery, the appellant, $4.50 for a two months' vacancy permit under each policy. On November 15, 1905, for a like sum, she obtained like vacancy permits for the two months next ensuing. On January 15, 1906, between 12 and 1 o'clock in the afternoon, the appellee, by her son, paid to the appellant $4.50 for two similar vacancy permits for the two months next to ensue; and the son directed the appellant to send the permit to an institution at Sandy Springs, Maryland, which owned a mortgage on appellee's home and held the two insurance policies. On cross-examination the son said this transaction occurred between 2 and 3 o'clock in the afternoon of the day last mentioned. The appellant intended to obtain the permits and to mail them to the appellee at the Virginia Apartment House in Washington as her son had directed, and because of stress of business the appellant overlooked the matter until 5 o'clock that day, when he telephoned to Holton, the agent of the insurers, but failed to reach him. Holton testified that he had issued the vacancy permits before mentioned in September and November, 1905, and that any time during office hours on January 15, 1906, the day on which the appellee's son paid to the appellant the price of the vacancy permits for the two months next to ensue, if the appellant had applied to Holton for these permits he would have issued them as of noon on that day. The issuing of the policies and their continuance in force until that hour is not to be fairly disputed. Holton's clerk testified it was not the custom in his office to physically attach the permit to the policy unless the policy was tendered at the time. Each policy contained a provision that the "entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void  *  *  *  if a building herein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied and so remain for ten days." Each policy con-

tained the usual clause, that no person should be deemed agent of the company unless duly authorized in writing, and that no agent should have power to waive any provision or condition of the policy "except such as by the terms of this policy may be the subject of agreement indorsed thereon, or added hereto; and as to such provisions and conditions no officer, agent, or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto; nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

In each *instance the policy was signed by a proper officer of the insurer, but was to be valid only when countersigned by the duly authorized agent of the company at Hyattsville, Maryland; and in each instance the policy was countersigned at that place by William Shedd Holton, agent.

The appellee's house was destroyed by fire on January 16, 1906. The two insurance companies refused to pay, for the reason that the appellee's building was vacant at the time of the fire and there was no vacancy permit in existence at that time; and Mr. Barton, the attorney for the appellee, therefore made a settlement with the insurers, and upon its $2,000 policy the Phœnix Insurance Company paid $1,200, and upon its $1,000 policy the Girard Insurance Company paid $300.

The appellee thereupon sued the appellant to recover the difference between the $1,500 received from the insurers and $3,000 which she alleged she would have been entitled to but for the negligence of the appellant in failing to procure the vacancy permits from the company through Holton, the agent of each company. Under instructions, the jury returned a verdict in favor of the appellee for $1,500, and the defendant below appealed.

It is immaterial whether or not the appellee knew that the appellant, the insurance broker, was dealing respecting the policies through Mr. Holton, the agent of the insurers. The policies explain that the permits should be obtained from the proper agent of the company, and from the record it ap-

pears that the fire occurred before the vacancy permits were obtained. It was proved that the money was paid to the appellant in ample time for him to have secured the permits and to have mailed them to the appellee's residence in Washington, and probably to Sandy Spring. The testimony shows that if the appellant had communicated with Holton, which he had time to do, he would have secured the vacancy permits, and the insurance companies refused to pay it only because there were no vacancy permits in existence. According to the prior dealing between the parties, and consistently with the terms of the policies, the essential things were the payment of the price for the vacancy permits, and procuring these permits to be issued. According to the terms of the policies, such permits "could be indorsed hereon or added hereto." The undisputed proof was that the appellant forgot to obtain the permits, and the policies lapsed on the 15th, and the fire occurred on the 16th, of January, 1906. Since the appellant admitted he did not secure the permits at any time on January 15th, it was not material to inform the jury what might have happened in due course of mail if he had obtained and mailed them promptly. The appellant swore he was directed to mail the vacancy permits to the appellee at the Virginia Apartment House, in this city. The record does not disclose that he ever obtained the permits at any time. We find no error, therefore, under the first three assignments of error.

Holton, the agent of the insurers, testified that the method of issuing vacancy permits was to note the fact of payment for them on the records of the company at its local office, and to issue the permits as of noon on the same day. Had the appellant not been negligent, the policies which would have expired on noon of January 15th would have been extended by such permits sixty days, and would have been in full force when the fire occurred. No authority has been produced to show that the local agent who issued the permits had no power so to do until after his companies, one in Philadelphia, and one in London, had ratified his acts.

The "ten days' vacancy clause," in our opinion, means the

ten days next ensuing after the end of the term of the policy, and it does not mean that the company was liable during any ten days after the expiration of any vacancy permit period. Nor do we find any difficulty in holding that there was sufficient proof of the value of the property to meet the requirements of "three-fourth value clause" in the policies.

The court below committed no error upon the only two questions involved. It did not err. in excluding evidence as to the ordinary course of mail between Washington and Sandy Spring; it did. not err in holding that the vacancy permits were not required to be attached to the policy. In consequence, the court below did not err in refusing to take the case from the jury. In the oral charge the questions involved were clearly and fairly explained to the jury.

We find no error, and the judgment below must be *affirmed, and it is so ordered.*